UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN MENDEZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:18 C 6313 |
| v. | ) | Hon. Marvin E. Aspen |
| | ) | |
| CITY OF CHICAGO, and | ) | |
| CHRISTIAN SZCZUR, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Before us is Defendant City of Chicago's ("City") motion to dismiss Count V of Plaintiff Juan Mendez's second amended complaint (Second Amended Compl. ("SAC") (Dkt. No. 51).) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 55).) Also before us is the City and Defendant Christian Szczurs' joint motion to dismiss Counts II, III, and IV of Mendez's second amended complaint, pursuant to Rule 12(b)(6), and Defendants' motion to strike Count I as duplicative, pursuant to Federal Rule of Civil Procedure 12(f). (Joint Mem. in Supp. of Mot. to Dismiss ("Joint Mem.") (Dkt. 52).) For the reasons stated below, we deny the City's motion as to Count V, grant in part and deny in part Defendants' motion to dismiss Count II, and grant Defendants' motion as to Counts III and IV. We also deny Defendant's motion to strike.

## BACKGROUND

Mendez asserts that Police Officer Szczur unlawfully entered his property without probable cause or reasonable articulable suspicion, caused Mendez to flee, and then shot Mendez in the back as he fled. Mendez alleges that the City of Chicago and Officer Christian Szczurs'

conduct constituted excessive force (Count I), violated the Fourth Amendment prohibition against unreasonable searches and seizures (Count II), and violated Mendez's substantive due process right to bodily integrity under the Fourteenth Amendment (Count IV). (SAC ¶¶ 17, 21, 30.) Mendez also alleges his criminal trial for unlawful possession of a concealed handgun violated his procedural due process rights under the Fourteenth Amendment because officers gave false evidence against him or otherwise tainted his criminal trial (Count III). (SAC ¶ 25.) Finally, Mendez alleges the City engaged in a pattern or practice of training its employees to use excessive force or engage in unlawful searches and seizures without a warrant, probable cause, or reasonable articulable suspicion under the *Monell* doctrine (Count V).[1] (SAC ¶ 46–49.)

On May 26, 2018, around 3:40 a.m., two uniformed police officers appeared at Plaintiff's place of residence. (SAC ¶¶ 5–6.). Mr. Mendez resided at 5239 West Ohio Street, in the City of Chicago, Cook County, in Illinois. (SAC ¶ 6.). The Officers were allegedly responding to a report that shots were fired in the vicinity of Plaintiff's home. (SAC ¶ 6). The content of this policy is not further discussed. (SAC ¶ 7.) Mr. Mendez alleges he was sitting on his porch lawfully and peacefully at the time the uniformed officers approached. (SAC ¶¶ 8–9.)

Plaintiff Mendez alleges Officer Szczur entered his property without a warrant, probable cause, or reasonable articulable suspicion of criminal activity. (SAC ¶¶ 8–12.) Officer Szczur allegedly asked Plaintiff to stand up, at which point Plaintiff fled his porch and ran down an alley adjoining his home. (SAC ¶ 12.) Officer Szczur and one or more fellow officers allegedly followed Mr. Mendez in hot pursuit, repeatedly threatening to shoot him. (SAC ¶13.) Plaintiff

---

[1] Mendez also alleges several state law claims, including battery, indemnification, and *respondeat superior* liability (Counts VI, VII, and VIII), which are not at issue in this opinion. (SAC ¶¶ 53, 57, 60.)

alleges he did not display a weapon, or any other behavior suggesting he was about to commit any criminal offense. (SAC ¶ 13.) Officer Szczur shot Plaintiff in the back several times while he was running down the alley next to his home. (SAC ¶ 14.) Plaintiff is paralyzed for life and unable to walk as a result of these shots fired into his back. (SAC ¶ 15.)

Plaintiff alleges Defendant City engaged in a pattern or practice of sanctioning such uses of force. (SAC ¶¶ 34.) Plaintiff cites the Police Accountability Task Force's report entitled "Recommendations for Reform: Restoring Trust between the Chicago Police and the Communities they Serve," the Department of Justice's 2017 "Investigation of the Chicago Police Department," and the Consent Decree entered in *State of Ill. v. City of Chi.*, No. 27 C 6260, Dkt. No. 703–1. (SAC ¶¶ 35–42.) Mendez claims that foot pursuits, such as the one that lead Officer Szczur to shoot him in the back, are customary for the CPD. (SAC ¶ 43.) He asserts these patterns or customs proximately caused Officer Szczur's use of excessive force against him and unlawful attempt to stop him. (SAC ¶ 45.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citing *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). In evaluating a motion to dismiss, we "construe the complaint in the light most favorable to the plaintiff, accepting as true all well–pleaded facts alleged, and drawing all possible inferences in [plaintiff's] favor." *Tamayo*, 526 F.3d at 1081. A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

3

550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

Defendants' motion to strike is governed by Federal Rule of Civil Procedure 12(f), which states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because they "potentially serve only to delay." *Helle Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The court should only strike claims that are *clearly* mistitled or redundant. *See Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000).

## ANALYSIS

### I. SUFFICIENCY OF *MONELL* PLEADINGS

Plaintiff alleges two *Monell* claims: the City's failure to train police or incorrect training of the police results in (1) a pattern or practice of excessive force; (2) a custom of unlawful searches and seizures without probable cause or reasonable suspicion. (SAC ¶ 45.) Defendant City filed its motion to dismiss Plaintiff's *Monell* claim against the city for failure to state a claim

4

under Federal Rule of Civil Procedure 12(b)(6). (Mem.). Defendant claims Plaintiff failed to alleged sufficient specific factual allegations to establish a "pattern or practice" of constitutional violations, in keeping with the requirements of *Monell*. (Mem. at 3.) Plaintiff points to several reports outlining patterns of constitutional violations, which he ties to his individual case. (SAC ¶¶ 37–42.)

Plaintiffs may recover against municipalities under 42 U.S.C. § 1983 for claims alleging a "policy or custom" of constitutional violations on the part of the city. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). Direct liability is only appropriate where the municipality's *deliberate* conduct was the "moving force" behind the constitutional injury the plaintiff alleges. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 384 (7th Cir. 2017) (en banc) (citing *Brown*, 520 U.S. at 400, 404, 117 S. Ct. at 1386, 1388.) "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Brown,* 520 U.S. at 406–07, 117 S. Ct. at 1389 (emphasis in original). Inadequate training *can* form the basis of municipal liability, although a pattern or program of constitutional violations usually is required to make out the necessary fault and causation claims. *Glisson*, 849 F.3d at 385–86. Continued adherence to an approach that municipal employees "know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their actions . . . ." *Id.* at 386 (quoting *Brown*, 520 U.S. at 407–408, 117 S. Ct. 1382). The policy requirement is also "certainly met when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained

5

of is simply an implementation of that policy." *Id.* at 417, 117 S. Ct. at 1395 (Souter, J., dissenting); *Glisson*, 849 F.3d at 385.

Failure to train or turning a blind eye to repeated excessive force violations could both give rise to *Monell* liability. *Glisson*, 849 F.3d at 384–86. "[B]ecause it is a "moral certainty" that police officers 'will be required to arrest fleeing felons,' 'the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.'" *Id.* at 382 (en banc) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10, 109 S. Ct. 1197, 1205 n.10 (1989)). Plaintiffs alleging a pattern or practice of constitutional violations may incorporate admissible evidence from official investigations, although they are not required to do so at the pleading stage. *See Daniel v. Cook Cty.*, 833 F.3d 728, 731 (7th Cir. 2016).

Plaintiff alleges facts sufficient to survive a motion to dismiss on his *Monell* claim. Plaintiff alleges that the City's practice of foot pursuits raises the risk of excessive force. (SAC ¶ 38 (a) (citing United States Department of Justice, Investigation of the Chicago Police Department ("DOJ Report") (Dkt. No. 44–5)).) Plaintiff alleges he was shot during precisely such a foot pursuit, in similar circumstances to those explicated in the portion of the Department of Justice report cited in his complaint. (SAC ¶¶ 12–15, 38(a), 38(d–f), 42 (citing DOJ Report at 2).) Plaintiff alternatively alleges systemic training failures giving rise to Chicago Police's repeated unnecessary use of force, particularly against fleeing suspects. (SAC ¶ 38(c–d) (citing DOJ Report at 2).) Finally, Plaintiff alleges the CPD fails to adequately train or enforce rules related to use of force, undermining deterrence value of those policies in a systematic way. (SAC ¶ 38(h).) Plaintiff thus directly alleges a claim of the type the Supreme

6

Court approved in *Harris* and the Seventh Circuit approved of in *Glisson*, along with allegations supporting his claim in the form of several reports on CPD's practices. *Harris*, 489 U.S. at 390 n.10, 109 S. Ct. at 1205 n.10; *Glisson*, 849 F.3d at 382. These allegations state a claim for a *Monell* violation as to unreasonable and excessive use of force, because taken as true they suggest the City's practices or customs proximately caused the use of excessive force against the Plaintiff.[2] *See, e.g.*, *Graham v. Sauk Prairie Police Com'n*, 915 F.2d 2085 (7th Cir. 1990) (affirming municipal liability in excessive force case); *Gibson v. City of Chi.*, 910 F.2d 1510 (7th Cir. 1990) (reversing dismissal of municipal liability claim where plaintiff pleaded inadequate police policies preventing unnecessary use of force); *Palmquist v. Selvik*, 111 F.3d 1332, 1345–46 (7th Cir. 1997) (holding plaintiffs must show how the training police received is causally related to his excessive force claim, while also rejecting plaintiff's claim as deficient in this respect).

Plaintiff alleges no facts specific to his claim that the City has a pattern of unlawful searches. (SAC ¶¶ 35.) Plaintiff's complaint primarily focuses on documenting the CPD's failure to train officers about use of force. (SAC ¶¶ 35–41.) Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. Mr. Mendez does not allege facts suggesting a pattern or custom of unlawful stops, despite alleging

---

[2] The City does properly state Circuit law that *Monell* liability for excessive force claims usually requires proving the underlying excessive force claim against the officer. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). Since at least the excessive force and unreasonable search claims survive this motion to dismiss, Defendant's argument that failure of the underlying constitutional violations merits dismissal of the *Monell* claim is irrelevant. To the extent Plaintiff alleges a pattern of Fourteenth Amendment violations, we do dismiss since we dismiss the underlying constitutional claims. (*see* SAC ¶ 47; *Jenkins*, 487 F.3d at 492.)

such a pattern exists when seeking relief. (SAC ¶ 45.) Since he fails to allege specific facts, we dismiss his *Monell* claim as to a pattern of unlawful searches.

## II. SEARCH AND SEIZURE CLAIMS

Defendants move to dismiss Mendez's Fourth Amendment search and seizure and Fourteenth Amendment substantive due process claims (Counts II and IV). Defendants argue Officer Szczur did not unreasonable search or seize Plaintiff, except when he shot him. Defendants claim the only Fourth Amendment claim is Plaintiff's excessive force claim (Count I). (Joint Mem. at 5–6.) Plaintiff responds arguing Officer Szczur entered his property without a warrant, probable cause or reasonable suspicion and asserted his authority against Mendez in order to seize him. (Mem. at 2–3.) Plaintiff also contends he has a substantive due process right to bodily integrity, which is an independent constitutional claim from his excessive force claim. (Mem. at 5–6.) Although Plaintiff correctly separates the search and seizure issues from the Fourth Amendment excessive force count, we conclude Plaintiff's complaint only states a separate claim for violation of the Fourth Amendment prohibition against unreasonable search. Plaintiff's excessive force claim is not challenged on this motion to dismiss.

### A. Search

Defendants argue Officer Szczur did not unreasonably search Mendez when he approached Mendez as he sat on his porch. (Joint Mem. at 5–6.) Plaintiff claims entering his land without a warrant, probable cause, or reasonable articulable suspicion of criminal activity alone violated the Fourth Amendment. (Mem. at 3–4.) Plaintiff is correct; for that reason, we deny Defendant's motion to dismiss Count II as to unreasonable search.

The Fourth Amendment, through the Fourteenth Amendment, protects against unreasonable municipal government searches or seizures. *See U.S. v. Sweeney*, 821 F.3d 893

(7th Cir. 2016). A search is unreasonable either if it violates a reasonable expectation of privacy or the conduct of the search involves a trespass to property. *U.S. v. Jones*, 565 U.S. 400, 404–6, 132 S. Ct. 945, 948-50 (2012); *U.S. v. Correa*, 908 F.3d 208, 217 (7th Cir. 2018). Even action as unobtrusive as bringing a dog to the front door of a home to sniff can constitute a search within the meaning of the Fourth Amendment. *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409 (2013). Although probable cause of criminal activity or a reasonable articulable suspicion that a person is armed and dangerous both could make intrusion upon a reasonable expectation of privacy acceptable in some circumstances, *see, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), intrusion upon the home is considered particularly severe. *Jardines*, 569 U.S. at 7, 133 S. Ct. at 1414; *Sweeney*, 821 F.3d at 900 (rejecting a Fourth Amendment claim for a common area of an apartment).

Plaintiff argues the entrance onto his curtilage without probable cause might be a trespass, and thus an unreasonable search under *Jones*. Plaintiff finds support from the broad language in *Jardines*: "the curtilage of the house . . . enjoys protection as part of the home itself." *Id.* at 6; *see also Sweeney*, 821 F.3d at 900 ("To violate the Fourth Amendment, the trespass must occur on a 'constitutionally protected area'…[t]his includes the home, which extends to the "curtilage" of the home as well."). *Sweeney*'s definition of trespass includes any entrance onto land in the possession of another. *Sweeney*, 821 F.3d at 900. The key question is whether one has a right to exclude others from entrance onto or interference with that property. *Id.* Unlike *Sweeney*, where the police searched a common area of an apartment building, Mr. Mendez's porch was an attachment to his home, and in his exclusive control. *See id.*;

(*see also* SAC ¶¶ 12–14.) Thus, plaintiff plausibly alleges trespass onto his curtilage in violation of the Fourth Amendment's prohibition on unreasonable search. (SAC ¶ 14).[3]

B.   **Seizure**

Defendants argue Officer Szczur's request that Mendez stand did not amount to a seizure, since Mendez did not comply with Szczur's show of authority. (Joint Mem. at 5.) Defendants concede Officer Szczur seized Mendez when he shot Plaintiff in the back but argue that this claim is duplicative of Plaintiff's excessive force claim. (Joint Mem. at 5–6.) Plaintiff claims that the show of authority, not merely the gunshot, was an unreasonable seizure. (Mem. at 3.) The Defendants correctly identify that no seizure occurred for the purposes of applying the Fourth Amendment until Officer Szczur shot Mr. Mendez. We accordingly dismiss Count II only to the extent that it restates Count I's excessive force claim.

*Hodari D.* forecloses Plaintiff's claim that he was seized under the Fourth Amendment, until physical force was used against him. A seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596–597, 109 S.Ct. 1378, 1381 (1989). A fleeing suspect has not been seized under the Fourth Amendment unless or until he yields to the police's assertion of authority. *See Cal. v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547 (1991). Plaintiff's attempt to distinguish *Hodari D.* as occurring outside the home confuses search and

---

[3] There is a question whether the police's approach in this case would constitute trespass, since approach to a front porch to call upon a neighbor was generally exempt from trespass liability. *But see Andree v. Ashland Cty.*, 818 F.2d 1306, 1315 (7th Cir. 1987) (suggesting trespass covers officer's entrance onto private land within close proximity to the home). We need not decide whether the police's conduct amounts to a physical trespass to land at this stage, since we have determined Plaintiff *plausibly* alleges the porch counts as curtilage within his exclusive possession. (SAC ¶ 14.) Thus, the plaintiff plausibly claims a cognizable constitutional harm: physical entrance onto his curtilage without a warrant, probable cause, or reasonable articulable suspicion of criminal activity. (SAC ¶¶ 8–9, 21.)

seizure precedents (Joint Resp. at 3.); *Hodari D.* does not only apply on a public street, it explicitly applies to all suspects who flee shows of authority. *Id.* ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.").

Plaintiff was not seized under his version of events until he was shot. Plaintiff alleges Officer Szczur entered his premises without permission and demanded he stand. (SAC ¶¶ 10, 12.) Had Plaintiff submitted to this show of authority, he may have been seized; instead, Plaintiff admits he fled. (SAC ¶ 12.) Thus, Plaintiff, by his own admission, does not have a claim to unlawful seizure until Officer Szczur shot him in the back. At that time, he was clearly seized, because the shots rendered him paralyzed. (SAC ¶¶ 14–15.)

Plaintiff's excessive force claim is properly pled and sufficiently supported. The Fourth Amendment protects against police officers' unreasonable use of force. *Sherrod v. Berry*, 856 F.3d 802, 804 (7th Cir. 1988) (en banc); *see also Tenn. v. Garner*, 471 U.S. 1, 3, 105 S. Ct. 1694 (1985); *Carlson v. Bukovic*, 621 F.3d 610, 619 (7th Cir. 2010) (citing *Garner*, 471 U.S. at 7, 105 S. Ct. at 1694); *Bukovic*, 621 F.3d at 621 ("[T]here are, of course, situations in which the totality of the circumstances require a determination that a seizure has occurred as a matter of law." (citing *Garner*, 471 U.S. at 7, 105 S. Ct. at 1694)). Excessive force claims are reviewed under an objective reasonableness test. *Berry*, 856 F.3d at 804. "When a jury measures the objective reasonableness of an officer's action, it must stand in his shoes and judge the reasonableness of his actions based upon the information he possessed and the judgment he exercised in responding to that situation." *Id.* at 804–805. In order to justify the use of deadly force, an officer must believe a suspect's actions place him, his partner, or those in the immediate vicinity of imminent danger of death or serious bodily injury. *Id.*

At this early date, we conclude Plaintiff has properly pled facts suggesting Officer Szczur used deadly force impermissibly. Plaintiff alleges he was shot in the back while fleeing down an alley away from Officer Szczur. (SAC ¶¶ 12, 14.) Taking this allegation as true, a reasonable jury could conclude Officer Szczur's actions were disproportionate to the threat Plaintiff posed as he fled. The Defendant's motion to dismiss, insofar as it implicates Plaintiff's excessive force claim under the Fourth Amendment, must therefore be denied.

## III. DUE PROCESS CLAIMS

Defendant argues there is no independent claim for violation of the Fourteenth Amendment Due Process Clause's substantive protections of the right to liberty or bodily integrity. The Fourteenth Amendment Due Process Clause arguably does protect bodily integrity, at least when it "shocks the conscience." *Rochin v. Cal.*, 342 U.S. 165, 172, 72 S. Ct. 205, 210 (1952). The Seventh Circuit declines to analyze search or seizure claims dealing with excessive force under the Due Process Clause. *Lester v. City of Chi.*, 830 F.2d 706, 712 (7th Cir. 1987).[4] The Court in *Lester* held: "[T]he Fourth Amendment, not substantive due process, provides the proper analysis in excessive force in arrest claims. This is especially so, given that the Fourth Amendment, unlike the Fourteenth Amendment, is specifically directed to unreasonable seizures." *Id.*[5]

---

[4] The Circuit's law follows the Supreme Court's cases since *Rochin*, which have analyzed invasive search or seizure claims under the Fourth Amendment. *See Winston v. Lee*, 470 U.S. 753, 105 S. Ct. 1611 (1985) (holding forced extraction of a bullet from a suspect's chest violated his right to bodily integrity, but under a Fourth Amendment theory).

[5] While the "shocks the conscience" test survives in police interrogation cases, free–standing due process claims are disfavored where another amendment covers the claim. *See Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010); *Cariel v. Alderden*, 821 F.3d 823 (7th Cir. 2016).

Plaintiff's due process claim is a rehash of his excessive force claim by another name. Plaintiff even refers to unreasonable seizure in the paragraph introducing Count IV. (SAC ¶ 30.) Plaintiff's only specific instance in which Defendant violated his bodily integrity is the shooting. (SAC ¶ 30.) Whether or not Officer Szczur's decision to shoot Plaintiff in the back was a constitutional violation is governed by the Fourth Amendment excessive force standard; a free–standing substantive due process claim is unnecessarily duplicative. *Lester*, 830 F.2d at 712. Therefore, we dismiss Plaintiff's substantive due process to bodily integrity claim in Count IV.

## IV. MOTION TO STRIKE

Defendants move to strike Plaintiff's excessive force claims as duplicative of his unlawful seizure claim. (Joint Resp. at 5.) Plaintiff responds that he has a claim for violation of the Fourth Amendment's prohibition on unreasonable searches and seizures independent of excessive force: trespass and unlawful seizure through a show of authority without probable cause. (SAC ¶ 21.) As explained above, Plaintiff is correct that he has a separate search claim; thus, Defendants' motion to strike is denied. We have already granted Defendant's motion to dismiss in part to limit the scope of Count II to avoid any redundancy with Count I.

For Defendants' motion to strike to succeed, then, they must prevail in their claim that no separate search *or* seizure claims exist outside of Plaintiff's excessive force claim in Count I. *See Renalds*, 119 F. Supp. 2d at 802 (describing motions to strike as appropriate for clearly redundant claims). We have already described above Plaintiff's properly pleaded unreasonable search complaint. Thus, Defendant fails to meet the high burden required for a motion to strike, and we decline to consider Counts I and II redundant enough to strike either Count.

## V. *HECK* BAR AND COLLATERAL ESTOPPEL

*Heck* and collateral estoppel both serve to bar already–litigated claims. *Heck* blocks constitutional torts that attack undisturbed criminal prosecutions, while collateral estoppel generally prevents duplicative litigation between parties over the same matter. *Heck v. Humphrey*, 512 U.S. 477, 487-88, 114 S. Ct. 2364, 2372-73 (1994); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 1527 (2005) (holding that collateral estoppel applies to State Court judgments under the Full Faith and Credit clause). Defendants argue both bar all of Plaintiff's claims, except his *Monell* claim. Plaintiff responds that he is not litigating his handgun prosecution, but instead prior unconstitutional investigatory activity. Plaintiff is correct that neither doctrine blocks Plaintiff's cause of action as to his Fourth Amendment and substantive due process claims (Counts I, II, and IV), but *Heck* does bar his procedural due process attack on the judicial proceedings that resulted in his criminal conviction (Count III).

### A. Fourth Amendment and Substantive Due Process Claims

Even if it is true in this factual circumstance that the prosecution could not have made out a case but for evidence Plaintiff implicitly challenges, it is not true that such evidence was *logically* necessary for a conviction. The Seventh Circuit has long held § 1983 suits bottomed on Fourth Amendment violations can go forward despite the plaintiff's criminal conviction remaining undisturbed. *Wallace v. City of Chi.*, 440 F.3d 421, 428-9 (7th Cir.2006) (*Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091 (2007) at the Circuit Court level); *Reynolds v. Jamison*, 488 F.3d 756, 767 (7th Cir.2007); *Easterling v. Moeller*, 334 Fed. Appx. 22, 23–24 (7th Cir. 2009). *Heck* specifically does not bar excessive force claims in this Circuit. *Vanguilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006). Excessive force claims challenge whether the *quantum* of force used was objectively reasonable, not whether seizure

was appropriate. *Id.* To hold otherwise would "imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *Id.*

Judgment for the Plaintiff here would not disturb his criminal conviction, because the conviction would have been possible even if the evidence were excluded. For example, evidence obtained in violation of the Fourth Amendment may be introduced to impeach the defendant should he choose to testify. *See Walder v. U.S.*, 347 U.S. 62, 65, 74 S. Ct. 354, 356 (1954) (holding an impeachment exception to the Fourth Amendment exclusionary rule exists). If Mr. Mendez chose to go to trial and claim he did not have possession of a concealed weapon, the prosecutor could have introduced evidence that he did, in fact, have a concealed weapon, despite that evidence being obtained in violation of the Fourth Amendment. *See id.*; *see also Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) (citing *Heck v. Humphrey*, 512 U.S. at 487 n.7, 114 S. Ct. at 2372 n.7). Finally, no part of the stipulated testimony in Plaintiff's guilty plea suggests he considered the search or seizure that allowed Officers Szczur and Cook to observe his illegal handgun reasonable. (Joint Mem. at 10.) Instead, Plaintiff simply stated the officers *observed* defendant knowingly carrying a handgun. (*Id.*) Plaintiff correctly states possession of a concealed handgun without a license is not a violation of Illinois Law unless and until a person is *off* of her land, abode, or legal dwelling. *See* 729 ILCS 5/12–1.6(A)(1). Since the officers observed Plaintiff originally while he was within the curtilage of his legal dwelling, Plaintiff's guilty plea did not involve the legality of the initial entrance to the abode. (SAC ¶¶ 8–9.) Instead, the Plaintiff's guilty plea concerned his possession of the handgun *after he fled* his porch; in other words, his conduct was unlawful *because* he reacted to the police and fled, but not until. (Joint Resp. at 8.) Had Plaintiff simply

surrendered to a search on the porch, he would not have violated the firearm statute to which he ultimately pled guilty. (Joint Resp. at 8.)

Collateral estoppel similarly does not apply to bar this action. Plaintiff's claims must have been *directly* litigated in previous litigation for collateral estoppel to apply under Illinois law. *See Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013). Plaintiff did not litigate the legality of the search or seizure of any evidence in his criminal case for unlawful possession of a firearm. He also did not litigate whether the quantum of force used to secure his arrest was excessive or violated his bodily integrity. Finally, resolution of these constitutional questions was not logically necessary to the court's judgment as explicated above; Mr. Mendez's guilty plea was not contingent upon an unfavorable evidentiary ruling about the gun he illegally possessed. Thus, none of Plaintiff's claims are barred under collateral estoppel.

### B. Procedural Due Process Claim

Defendant is correct that *Heck* bars Count III of Plaintiff's complaint, since Plaintiff directly challenges the lawfulness of the criminal judicial proceedings at which he pled guilty. *Heck* bars any constitutional tort liability that necessarily challenges the validity of an undisturbed criminal conviction, including attacks on the fact of confinement. *Heck v. Humphrey*, 512 U.S. at 481–82, 114 S. Ct. at 2369–70. Plaintiff cannot lever § 1983 to collaterally attack sufficiency of criminal proceedings at which he pled guilty without the criminal proceedings being resolved in his favor. *Id.* at 479, 114 S. Ct. at 2364; *see also Morgan v. Schott*, 914 F.3d 1115 (7th Cir. 2019) (summarizing *Heck*'s application to a prison administrative proceeding challenge). Similarly, claims that officers fabricated evidence during the investigation of a crime to which the defendant pled guilty do not remove the *Heck*

bar. *Johnson v. Winstead*, 900 F.3d 428 (7th Cir. 2018) ("[A]lleging a trial–based constitutional violation necessarily seeks damages for the resulting conviction.").

Plaintiff's deprivation of liberty claim necessarily implies the invalidity of his guilty plea. Plaintiff claims he was deprived of liberty because he was subjected to judicial proceedings without probable cause. (SAC ¶ 23.) He also claims Officer Szczur made false statements to other police officers and prosecutors to influence the judicial proceedings at which he subsequently pled guilty. (SAC ¶ 24.) Both arguments attack the validity of the underlying criminal process and both would imply Plaintiff's conviction was unlawful. *See Johnson*, 900 F.3d at 428. Therefore, neither version of this due process claim can survive the *Heck* bar. Any other claims here are duplicative of his valid Fourth Amendment claims described above and dismissed for the reasons we stated above in dismissing the substantive due process claims.

## ORDER

Defendants' joint motion to dismiss for failure to state a claim is **denied** as to Count II. Defendants' joint motion to dismiss is **granted** as to Counts III and IV. Defendants' motion to strike Count I as redundant with Count II is **denied**. Defendant City's motion to dismiss Count V is **granted in part and denied in part**. Plaintiff sufficiently supports his *Monell* claims related to excessive force but does not state a claim for any other *Monell* violations.

 _____
 Marvin E. Aspen
 United States District Judge

Dated: October 7, 2019
 Chicago, Illinois