**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN MENDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-6313 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| CITY OF CHICAGO, CHRISTIAN SZCZUR, and DAVID COOK, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Before us is Plaintiff Juan Mendez's motion for leave to file a fourth amended complaint. (Dkt. No. 145, Pl.'s Mot. for Leave to File 4th Am. Compl. ("Mot.").) Defendants Christian Szczur and David Cook (collectively, "the Officers") and the City of Chicago ("the City") oppose the motion. (Dkt. No. 157, Defs.' Opp'n to Pl.'s Mot. ("Opp'n").) For the following reasons, Mendez's motion is granted in part and denied in part.

**BACKGROUND**

Mendez alleges that on May 26, 2018, the Officers responded to a report of gunshots fired and appeared at or near Mendez's property pursuant to the Chicago Police Department's official "Shot Spotter Policy." (Dkt. No. 91, 3d Am. Compl. ("3AC"), ¶¶ 5–9.) The Officers then entered Mendez's property without authorization and approached Mendez and his friend. (*Id.* ¶¶ 9–11.) After the Officers began issuing commands, Mendez fled. (*Id.* ¶¶ 11, 13.) The Officers chased him and during the chase, Szczur shot Mendez several times in the back, paralyzing him for life. (*Id.* ¶¶ 14–16.)

In his original complaint, filed September 16, 2018, Mendez brought suit against the City and Szczur (who Mendez incorrectly identified as Christopher Szczurs), asserting claims for excessive force (Count I); unconstitutional search and seizure (Count II); deprivation of liberty without probable cause (Count III); deprivation of bodily integrity (Count IV); liability for an unconstitutional policy, custom, or usage under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978) (Count V);[1] battery (Count VI); indemnification (Count VII); and *respondeat superior* liability (Count VIII). (Dkt. No. 1, Compl., ¶¶ 5, 16–53.) Shortly thereafter, Mendez filed an amended complaint, which correctly identified Szczur but did not add any new defendants or claims. (*Compare* Dkt. No. 4, 1st Am. Compl. ("1AC"), *with* Compl.)

On May 23, 2019, Mendez filed a second amended complaint, which added allegations to support Count V, Mendez's *Monell* claim. (*Compare* Dkt. No. 51, 2d Am. Compl. ("2AC"), ¶¶ 32–50, *with* 1AC ¶¶ 32–42.) These allegations referred to an April 2016 report by the Police Accountability Task Force, a January 2017 investigation of the City's Police Department by the U.S. Department of Justice ("DOJ"), and a January 2019 consent decree from another case involving the City—all of which purportedly evince instances of police misconduct similar to those alleged by Mendez. (2AC ¶¶ 35–42.)

The City moved to dismiss 2AC Count V, and the City and Szczur jointly moved to dismiss 2AC Counts II, III, and IV. (Dkt. Nos. 52, 55.) On October 7, 2019, we dismissed 2AC

[1] "The Supreme Court held in *Monell* that plaintiffs may sue municipalities under 42 U.S.C. § 1983 when their actions violate the Constitution." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). To succeed on a *Monell* claim, a plaintiff must prove "(1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the moving force behind the constitutional injury." *Id.* (internal quotation marks omitted).

Count II to the extent it alleged an unlawful seizure before the shooting and restated Mendez's excessive force claim based on the shooting; dismissed 2AC Counts III and IV in their entirety; and dismissed 2AC Count V to the extent it alleged a pattern of unlawful searches. (Dkt. No. 73, Oct. 7, 2019 Mem. Op. & Order ("Oct. 7, 2019 Op."), at 7–8, 10–11, 13, 16–17.) We allowed 2AC Count II to proceed on the theory that Szczur's entry onto Mendez's property constituted an unreasonable search and 2AC Count V to proceed on the theory that the City's practices and customs have resulted in the use of excessive force. (*Id.* at 4–10.)

Mendez then requested and received permission to file a third amended complaint. (Dkt. Nos. 89, 90.) Mendez's third amended complaint added Cook as a defendant; identified Counts II, III, IV, and V without restating their underlying allegations; and purported to replead 2AC Counts II and V as Counts IX and X, respectively. (3AC at 1, 5.) The Officers moved to strike 3AC Counts II, III, IV, and V, as well as portions of 3AC Count IX. (Dkt. No. 97.) On August 14, 2020, we struck 3AC Counts III, IV, and X in their entirety and struck portions of 3AC Counts II, V, and IX consistent with our October 7, 2019 Opinion. (Dkt. No. 107, Aug. 14, 2020 Mem. Op. & Order ("Aug. 14, 2020 Op."), at 1, 3–5.) Based on the reasoning set forth in our October 7, 2019 Opinion, we struck 3AC Count IX's "allegations that a seizure occurred before Mendez was shot." (*Id.* at 4–5.) We also *sua sponte* struck 3AC Count X in its entirety because there were no material differences between this count and 2AC and 3AC Count V. (*Id.* at 5.)

On December 9, 2020, Mendez moved for leave to file a fourth amended complaint. (Dkt. No. 145.) At this time, fact discovery was set to close on December 31, 2020, just twenty-two days later.[2] (Dkt. No. 124.) The magistrate judge subsequently extended the December 31

[2] We originally ordered fact discovery to close on October 4, 2020, but we extended that deadline two times: first, to November 20, 2020, and then to December 31, 2020. (Dkt. Nos. 79, 116, 124.)

deadline, but only for limited purposes. (Dkt. No. 172 (extending deadline for the limited purpose of conducting certain depositions); Dkt. No. 185 (extending deadline for the sole purpose of deposing the City's Civilian Office of Police Accountability investigator).) Even with these extensions, fact discovery closed in all respects on July 30, 2021. (Dkt. No. 185.)

## LEGAL STANDARD

A district court should freely allow a plaintiff to amend his complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, a district court must allow a requested amendment unless there is a good reason to deny the request. *Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019). Good reasons for denying a request to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

## ANALYSIS

Mendez's proposed fourth amended complaint alleges "Facts Common to All Counts" and then sets forth eight counts. (Dkt. No. 145-1, Proposed 4th Am. Compl. ("Proposed 4AC").) The differences between the alleged common facts in the proposed fourth amended complaint and the operative third amended complaint are minor, and proposed Counts I, VI, VII, and VIII do not materially differ from their counterparts in the third amended complaint (*compare* Proposed 4AC ¶¶ 1–20, 86–96, *with* 3AC ¶¶ 1–20, 51–61), so we do not discuss these aspects of the proposed fourth amended complaint further. Rather, our analysis focuses on the four remaining proposed counts: proposed Count II, which alleges an unconstitutional search; proposed Count III, which alleges a *Monell* claim based on policies that result in the use of excessive force; proposed Count IV, which alleges a *Monell* claim based on the City's

ShotSpotter policy; and proposed Count V, which alleges a *Monell* claim based on the City's failure to have a policy governing when and how police officers should pursue criminal suspects on foot. (Proposed 4AC ¶¶ 21–85.)

## I. Proposed Count II

We begin with proposed Count II, which is titled "42 U.S.C. Sec. 1983: Unconstitutional Search." (4AC at 5.) Although Mendez's proposed Count II is similar to 3AC Count IX, which has the same title (3AC at 8), the allegations in proposed Count II differ from the allegations in 3AC Count IX in three ways. First, in identifying the actions that violated Mendez's right to be free from unreasonable searches, proposed Count II replaces 3AC Count IX's allegation that the Officers shot him with an allegation that the Officers conducted or attempted to conduct a pat-down search. (*Compare* 4AC ¶ 22, *with* 3AC ¶ 63.) Second, proposed Count II replaces 3AC Count IX's allegation that the Officers did not have "just cause" for their actions with an allegation that they lacked "warrant, consent, [or] exigent circumstances." (*Compare* 4AC ¶ 22, *with* 3AC ¶ 63.) Third, proposed Count II includes the following paragraph, which 3AC Count IX does not include: "As a direct and proximate result of the unconstitutional conduct set forth in the preceding paragraph, PLAINTIFF suffered injuries and damages as set forth within Paragraphs 15 and 16 above." (4AC ¶ 23.)

We see no issue with the second and third proposed amendments. The second change simply defines "just cause" with more particularity, and the third change merely makes explicit what should already be apparent to Defendants—that Mendez contends that the Officers' unconstitutional conduct injured him. Although it is unclear why Mendez did not include these allegations earlier in the case, they do not prejudice Defendants in any way. In fact, Defendants do not even mention these proposed amendments in their opposition. (*See generally* Opp'n.)

That leaves the first proposed amendment, which alleges that the Officers conducted or attempted to conduct a pat-down search. We deny Mendez's request to include this allegation. Mendez obviously has known about any pat-down since May 2018, and nothing precluded him from including a corresponding allegation in any of his four previous complaints. Especially with fact discovery now closed, Defendants would be unduly prejudiced if we allow Mendez to base his unconstitutional search claim on an additional, previously unidentified search that he has known about (if it occurred) since before the onset of this litigation. *See Johnson v. Cypress Hill*, 641 F.3d 867, 872–73 (7th Cir. 2011).

Other allegations carried over from 3AC Count IX should not be in the proposed fourth amended complaint either. Proposed Count II, like 3AC Count IX, alleges that the Officers approached Mendez, stopped him, and detained or attempted to detain him. (4AC ¶ 22; 3AC ¶ 63.) These actions all indicate that the Officers seized Mendez before he was shot, even though we already struck 3AC Count IX's "allegations that a seizure occurred before Mendez was shot." (Aug. 14, 2020 Op. at 4–5.) Mendez cannot avoid this ruling by repleading such allegations. *See Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (a proposed amendment that "reassert[s] claims previously dismissed" or "restat[es] the same facts using different language" is futile). Proposed Count II also alleges that the Officers pursued Mendez. (4AC ¶ 22.) But mere pursuit by the police does not constitute a Fourth Amendment "search." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–45, 118 S. Ct. 1708, 1715–16 (1998) (police chase did not constitute a "search" or "seizure" under the Fourth Amendment); *Smith v. Ciesielski*, 975 F. Supp. 2d 930, 942 (S.D. Ind. 2013) (same). The Officers' pursuit of Mendez cannot legally form the basis for his unconstitutional search claim. *See Garcia*, 24 F.3d at 970 (a proposed amendment that "fail[s] to state a valid theory of liability" is futile).

Consequently, Mendez can proceed on proposed Count II, except that he cannot allege the following language, which is currently found in paragraph 22 of the proposed fourth amended complaint: "approaching him, stopping and detaining and/or attempting to detain PLAINTIFF, conducting and/or attempting to conduct a pat-down search and pursuing him."

## II. Proposed Count III

Proposed Count III, titled "42 U.S.C. Sec. 1983: Policy, Custom or Usage – Excessive Force," is a *Monell* claim based on policies that have resulted in the use of excessive force. (4AC at 6.) For the most part, proposed Count III is substantively the same as 3AC Count X.[3] (*Compare id.* ¶¶ 24–47, *with* 3AC ¶¶ 64–87.) 3AC Count X, in turn, was intended to replead 2AC Count V. (3AC at 5.)

Defendants argue that proposed Count III is futile because it mirrors 3AC Count X, which we have already struck. (Opp'n at 8.) True, we struck 3AC Count X because it was "clearly redundant and duplicative of" 2AC and 3AC Count V. (Aug. 14, 2020 Op. at 5.) But we are already allowing Mendez to file a fourth amended complaint with respect to proposed Count II, and once Mendez files this pleading, it will "wipe[] away" the third amended complaint and "control[] the case from that point forward." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Notably, Defendants do not point to another count from the proposed fourth amended complaint that renders proposed Count III redundant or duplicative. And it is simpler to address Mendez's excessive force *Monell* claim by referring to Count III of the fourth amended (and operative) complaint than by referring to the allegations in Count V of prior (and superseded) complaints.

[3] The one exception is paragraph 35 from the proposed fourth amended complaint. Whereas the corresponding paragraph from the third amended complaint, paragraph 75, lists seven allegedly unconstitutional policies that the City's Police Department maintained as of May 2018 (3AC ¶ 75(a)–(g)), proposed paragraph 35 only lists four of these policies (4AC ¶ 35(a)–(d)).

That said, proposed Count III fails to comply with our October 7, 2019 Opinion. There, we dismissed 2AC Count V "as to a pattern of unlawful searches" because Mendez did not allege any facts to support 2AC Count V's allegation of a pattern or custom that resulted in illegal and improper "investigatory stops" (2AC ¶ 45). (Oct. 7, 2019 Op. at 7–8.) Yet proposed Count III still alleges that the City's customs, practices, and policies resulted in illegal and improper "investigatory stops." (Proposed 4AC ¶ 37.) Given our previous ruling, Mendez cannot proceed with this allegation. *See Garcia*, 24 F.3d at 970.

Accordingly, Mendez can proceed on proposed Count III except that it cannot be based on improper or illegal investigatory stops or searches. This means that proposed Count III cannot contain the "investigatory stop" allegation from paragraph 37 or any other allegation indicating that proposed Count III seeks liability for a policy that results in unlawful searches.

## III. Proposed Counts IV and V

Proposed Count IV is a *Monell* claim based on the City's ShotSpotter policy. (Proposed 4AC ¶¶ 48–68.) It alleges that the ShotSpotter policy was "the moving force behind the excessive force used against" Mendez because it caused the Officers to illegally enter his property, which caused him to flee, which caused him to be permanently injured. (*Id.* ¶¶ 64, 65.) Proposed Count IV further alleges that: (1) despite the ShotSpotter policy's mandate that a ShotSpotter alert does not, by itself, give a responding police officer the authority to enter private property, the "widespread practice and custom" was for the City's police officers to "enter private property based only on [a] ShotSpotter alert to the subject area"; (2) the ShotSpotter policy unlawfully "defines 'private property' only as the actual physical structure of a home"; and (3) the City's Police Department improperly delegated training for the ShotSpotter policy to a California-based third party. (*Id.* ¶¶ 53, 54, 56–59.) Many of proposed Count IV's allegations

purport to be based on testimony from the City's Rule 30(b)(6) witness regarding the ShotSpotter policy. (*Id.* ¶¶ 55–60.)

Proposed Count V is a *Monell* claim based on the City's alleged failure to have a policy governing when and how police officers should pursue criminal suspects on foot. (*Id.* ¶¶ 69–85.) According to proposed Count V, the City's lack of a foot pursuit policy led to Mendez being shot, and a January 2017 investigative report from the DOJ allegedly warned the City's Police Department that it should implement a foot pursuit policy to prevent the sort of constitutional deprivations that Mendez experienced in this case. (*Id.* ¶¶ 73–79.)

Defendants argue that Mendez unduly delayed in bringing these claims and that allowing him to proceed with them in this case would be prejudicial. (Opp'n at 5–7.) As the party seeking leave to amend, Mendez bears the burden of showing that Defendants will not be prejudiced by the amendment. *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994). Mendez's explanation (or lack thereof) for the delay in raising these claims factors into our analysis as well. *See, e.g.*, *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773–75 (7th Cir. 1995) (finding that the plaintiff's failure to explain why the amendment did not take place sooner supported the district court's denial of a motion to amend); *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1303–04 (7th Cir. 1993) (same); *Kleinhans v. Lisle Sav. Profit Sharing Tr.*, 810 F.2d 618, 625–26 (7th Cir. 1987) (same).

Mendez has failed to show that Defendants would not be unduly prejudiced by the addition of proposed Counts IV and V. Undue prejudice exists when a proposed amendment raises a new and separate claim that "would require expensive and time-consuming new discovery." *Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.*, 506 F. Supp. 1051, 1054 (N.D. Ill. 1980); *accord Brown v. City of Chicago*, No. 12-cv-02921, 2017 WL 11515229, at *2

(N.D. Ill. Sept. 14, 2017). Proposed Counts IV and V are new and separate claims in that Mendez has not previously alleged that the ShotSpotter policy and the lack of a foot pursuit policy provide independent and distinct bases for *Monell* liability. Additionally, Defendants assert that the parties will have to conduct "extensive discovery" regarding the two new *Monell* claims and that the City will have to determine "how to defend these claims separately from [Mendez's] excessive force *Monell* claim." (Opp'n at 6.) We have no reason to question these assertions; defending against a new claim may "require additional rounds of discovery, in all probability interview[s] of new witnesses, gathering of further evidence, and the identification of appropriate legal arguments." *See Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988). If this was not the case here, Mendez should have explained in his opening brief why adding proposed Counts IV and V to this case would not necessitate more discovery, or he should have challenged Defendants' assertions about discovery in a reply brief—neither of which he did. *See Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 922 (7th Cir. 2020) ("Columbia did not raise these arguments in its initial brief, so they are forfeited."); *Wilcosky v. Amazon.com, Inc.*, --- F. Supp. 3d ----, 2021 WL 410705, at *10 (N.D. Ill. Feb. 5, 2021) (construing the plaintiffs' failure to respond to the defendant's argument as a concession on that point). Nor has Mendez offered to reimburse Defendants for any expenses they may incur in conducting discovery on the proposed ShotSpotter and foot pursuit *Monell* claims. *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002) ("A trial court may deny leave to amend when the amendment would cause the opposing party to bear additional discovery costs litigating a new issue and the moving party does not offer to reimburse the nonmoving party for its expenses.").

If fact discovery had just begun, the additional discovery necessitated by proposed Counts IV and V may not have been problematic. Here, though, Mendez moved to add proposed Counts IV and V after the parties had already engaged in fact discovery for more than a year[4] and only a few weeks before fact discovery (with two exceptions) closed at the end of 2020. Furthermore, this was after we had "already been exceedingly generous in extending the close of fact discovery on multiple occasions, notwithstanding the fact that it was originally set to close on October 4, 2020, and the parties were advised in December 2019 that no extensions would be allowed." (Dkt. No. 181 at 10.) Allowing Mendez to litigate this case for more than two years and then add two new and separate theories of *Monell* liability on the eve of a fact discovery cut-off that had already been extended twice would unduly prejudice Defendants. *See Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990) ("Eleventh hour additions of new legal and factual theories inevitably require new rounds of discovery and additional legal research. This is bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants."); *Conroy Datsun*, 506 F. Supp. at 1054 (finding that the defendant was unduly prejudiced where the plaintiffs filed their motion to amend "ten days before the close of discovery" and the motion, "if allowed, would require additional and duplicative discovery on an entirely new area of inquiry"); *see also Johnson*, 10 F.3d at 1304 ("There must be a point at which a plaintiff makes a commitment to the theory of its case.").

Our decision to not allow Mendez to pursue proposed Counts IV and V is further supported by his failure to adequately explain why he did not pursue these claims earlier. *See, e.g.*, *Sanders*, 56 F.3d at 773–75; *Johnson*, 10 F.3d at 1303–04; *Kleinhans*, 810 F.2d at 625–26.

[4] On August 27, 2019, we granted Mendez's motion to commence and expedite fact discovery and ruled that discovery would not be stayed while the City's and Szczur's motions to dismiss were pending. (Dkt. No. 67.)

Although Mendez appears to contend that both proposed counts were necessitated by "recent deposition testimony" from two of the City's Rule 30(b)(6) witnesses (Mot. ¶ 3), he does not direct us to any Rule 30(b)(6) deposition testimony that revealed for the first time the facts underlying his proposed foot pursuit *Monell* claim. To the contrary, proposed Count V's allegations repeatedly refer to a *January 2017* investigative report from the DOJ. (Proposed 4AC ¶¶ 73–79.) Mendez has been aware of this report since at least May 2019—more than a year-and-a-half before moving to amend—when he alleged in 2AC Count V that the report showed, among other things, that "CPD officers engage in a pattern of reckless foot pursuits." (2AC ¶¶ 37, 38(e).) In the same pleading (and even earlier), Mendez also alleged that the City's failure to properly "train its police officers . . . as to how, and when, to engage in foot pursuits of individuals" constituted an unconstitutional custom or practice. (*Id.* ¶ 43(b); *see also* Compl. ¶ 35(b) (same allegation).) Based on these allegations, we do not see why Mendez did not seek to assert a separate *Monell* claim based on the City's alleged lack of a foot pursuit policy much earlier in the litigation.

As for the other proposed *Monell* claim, Mendez has been aware of the underlying ShotSpotter policy since he filed the original complaint in September 2018. (Compl. ¶ 7 (alleging that "Chicago Police officers . . . arrived pursuant to an official policy . . . known as the Shot Spotter Policy"); *id.* ¶ 35(d) (alleging the City's failure to properly train its officers "to deploy and investigate in response to Shot Spotter incidents" constituted an unconstitutional custom, practice, or policy).) What is more, Defendants contend (and Mendez does not dispute) that they produced the ShotSpotter directive to Mendez in December 2019 and that Mendez "has asked every witness in this case about the City's ShotSpotter directive" and the training provided for the directive. (Opp'n at 5.) Perhaps the City's Rule 30(b)(6) witness disclosed facts

regarding the ShotSpotter policy that Mendez did not yet know, but nothing suggests that the discovery of these facts was necessary before Mendez could assert a separate *Monell* claim based on the ShotSpotter policy.

In sum, Mendez has failed to (1) show that Defendants would not be unduly prejudiced by having to defend against proposed Counts IV and V, and (2) give a good reason for not bringing these claims sooner. We therefore deny Mendez's request for leave to add these claims to the case.

**CONCLUSION**

For the foregoing reasons, Mendez's motion for leave to file a fourth amended complaint (Dkt. No. 145) is granted in part and denied in part. Mendez may file the document found at Docket No. 145-1 as a fourth amended complaint, subject to the following conditions. First, Count II cannot contain the "approaching him, stopping and detaining and/or attempting to detain PLAINTIFF, conducting and/or attempting to conduct a pat-down search and pursuing him" language currently found in paragraph 22. Second, Count III cannot contain the "investigatory stop" language from paragraph 37 or any other allegation indicating that Count III seeks liability for a policy that results in unlawful searches. Third, Mendez's fourth amended complaint cannot assert proposed Counts IV and V. It is so ordered.

Honorable Marvin E. Aspen
United States District Judge

Dated: August 9, 2021