UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN MENDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-6313 |
| v. ) | |
| ) | Judge Marvin E. Aspen |
| CITY OF CHICAGO, CHRISTIAN ) | |
| SZCZUR, and DAVID COOK, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

MARVIN E. ASPEN, District Judge:

Defendants Chicago Police Officers Christian Szczur and David Cook (collectively, "the Officers") move to strike Section II of Plaintiff Juan Mendez's motion for partial summary judgment and related statements of fact. (Defendants' Motion to Strike Section II of Plaintiff's Motion for Summary Judgment and the Corresponding Statements of Fact ("Mot. to Strike") (Dkt. No. 219) at 1.) The Officers also seek leave to file their own summary judgment motion if we deny their motion. (*Id.* at 5.) Mendez opposes the Officers' motion and cross-moves for leave to file an additional statement of undisputed material fact in support of his summary judgment motion. (Plaintiff's Response to Defendants' Motion to Strike Section II of Plaintiff's Partial Motion for Summary Judgment and the Corresponding Statement of Undipsuted [sic] Material Facts and Plaintiff's Cross-Motion for Leave to File an Additional Statement of Undipsuted [sic] Material Fact ("Resp.") (Dkt. No. 225).) For the following reasons, the Officers' motion to strike and Mendez's cross-motion are denied.

# BACKGROUND

## I. Factual Background

We take the following facts primarily from Mendez's summary judgment memorandum. (*See* Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Summ. J. Mem.") (Dkt. No. 213).) We recount them without vouching for their accuracy or deciding whether they are genuinely undisputed.

In the early morning of May 26, 2018, the Officers responded to a ShotSpotter alert that directed them to 5235 West Ohio Street in Chicago, Illinois. (*Id.* at 4.) After arriving at this address, Cook spotted Mendez and a juvenile sitting on the front porch of Mendez's home, which is located at 5239 West Ohio Street. (*Id.*; Dkt. No. 210 at 6.) Cook proceeded to interview Mendez and the juvenile while standing at the gate in front of the 5239 West Ohio Street property. (Pl.'s Summ. J. Mem. at 4.) Shortly thereafter, Szczur arrived and entered the property through the front gate. (*Id.* at 4, 10.) He advanced up the porch steps, questioning Mendez and the juvenile about their possessions and ordering them to stand up, raise their hands, and move towards the police. (*Id.* at 4–5, 10.) After the juvenile descended the steps, Cook began patting him down. (*Id.* at 5.) When Szczur came near Mendez, however, Mendez jumped over the side of the porch and fled. (*Id.*) Szczur gave chase and shot Mendez three times in the back. (*Id.* at 4–5.) As a result of the shooting, Mendez is paralyzed from the waist down and confined to a wheelchair. (*Id.* at 4.)

## II. Procedural Background

Mendez sued the City of Chicago ("the City") and Szczur, asserting various claims, including one for unconstitutional search and seizure (Count II). (Dkt. No. 1.) After Mendez amended his complaint twice (Dkt. Nos. 4, 51), Count II of the Second Amended Complaint alleged, in relevant part, that Szczur's actions in "stopping and detaining [Mendez], pursuing him

and shooting him repeatedly in the back with a firearm without just cause, violated [Mendez's] rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable searches and seizures[.]" (Dkt. No. 51 ¶ 21.) The City and Szczur jointly moved to dismiss Count II. (Dkt. No. 52.) In an opinion dated October 7, 2019, we dismissed Count II to the extent it alleged that an unlawful *seizure* occurred before the shooting because Mendez was not seized until he was shot. (October 7, 2019 Memorandum Opinion & Order (Dkt. No. 73) ("Oct. 7, 2019 Op.") at 10–11; *see also* August 14, 2020 Memorandum Opinion & Order (Dkt. No. 107) ("Aug. 14, 2020 Op.") at 3 ("In the October 2019 Order, we partially dismissed the part of SAC Count II that alleged a seizure before Mendez was shot.").) But we concluded that Mendez's complaint stated a Fourth Amendment claim based on an unreasonable *search*, and we allowed Count II to otherwise proceed because Szczur's entry onto Mendez's property could constitute a trespass onto Mendez's curtilage and, therefore, an unreasonable search. (Oct. 7, 2019 Op. at 8–10.)

Mendez then requested and received permission to file a third amended complaint. (Dkt. Nos. 89, 90.) Among other things, Mendez's third amended complaint added Cook as a defendant and purported to replead Count II from the Second Amended Complaint as Count IX. (Dkt. No. 91 at 1, 5.) Count IX of the Third Amended Complaint, titled "Unconstitutional Search," alleged in relevant part that the Officers' actions

> in entering [Mendez's] property, approaching him, stopping and detaining and/or attempting to detain [Mendez], pursuing him and shooting him repeatedly in the back with a firearm without probable cause, reasonable articulable suspicion, just cause, or any legally sufficient grounds to do so, violated [Mendez's] rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable searches[.]

3

(*Id.* at 8 & ¶ 63.) The Officers moved to strike portions of Count IX based on our October 7, 2019 opinion. (Dkt. No. 97 at 5.) On August 14, 2020, we issued an opinion in which we concluded that Count IX "should receive the same treatment that we gave" Count II from the Second Amended Complaint in our prior October 2019 opinion. (Aug. 14, 2020 Op. at 4.) Accordingly, we struck Count IX's "allegations that a seizure occurred before Mendez was shot." (*Id.* at 4–5.)

## ANALYSIS

Mendez has moved for partial summary judgment on Count IX of the operative Third Amended Complaint. (Dkt. No. 211.) He argues that he is entitled to summary judgment on this count because it is undisputed that the Officers violated his Fourth Amendment rights when they (1) "initiated an investigatory stop of [Mendez] without legal justification," and (2) "entered his property without legal justification." (Pl.'s Summ. J. Mem. at 1.) In Section II of his summary judgment memorandum, Mendez addresses the first theory; he argues that Cook initiated a *Terry* stop[1] when he began questioning Mendez and the juvenile; that Szczur continued the stop by entering the property and questioning and issuing orders to Mendez and the juvenile; and that the stop constituted an unreasonable search. (*Id.* at 7–15.)

### I. The Officers' Motion to Strike

In moving to strike Section II and any related statements of fact, the Officers make three arguments. We address each argument in turn.

First, the Officers contend that Mendez should not be permitted to pursue an unreasonable search claim based on their alleged *Terry* stop because our prior rulings dismissed

---

[1] Under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), a police officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989).

and struck Mendez's allegations that he was seized before he was shot. (Mot. to Strike at 2–4.) The problem with this contention, however, is that Mendez does not argue in Section II that he was subjected to an unreasonable *seizure* before the shooting; he argues that the alleged *Terry* stop constituted an unreasonable *search* before the shooting. (*E.g.*, Pl.'s Summ. J. Mem. at 7 (asserting that "an unconstitutional search [] occurred when Defendant police officers initiated a legally insufficient *Terry* stop"); *id.* at 8 ("An Unjustified Terry Stop Is an Unreasonable Search Under the Fourth Amendment and Gives Rise to Recovery Under §1983.").) Given that searches and seizures are "distinct governmental encroachments," *United States v. Brown*, 79 F.3d 1499, 1508 (7th Cir. 1996), Mendez's inability to pursue a pre-shooting seizure claim does not affect his ability to pursue a pre-shooting search claim.

Second, the Officers contend that our October 7, 2019 opinion narrowed Mendez's unreasonable search claim "to the unlawful entry into [Mendez's] yard *only*." (Mot. to Strike at 2; *see also* Defendants' Reply in Support of Their Motion to Strike Section II of Plaintiff's Motion for Summary Judgment ("Reply") (Dkt. No. 227) at 3 ("[T]he only claim that survived Defendants' Motion to Dismiss [Count II of the Second Amended Complaint] was Plaintiff's claim of an unlawful entry onto Plaintiff's *property*.").) Mendez reads our October 7, 2019 opinion differently; he contends that this opinion does not bar him from pursuing an illegal search claim based on the alleged *Terry* stop. (*E.g.*, Resp. at 4.)

Mendez has the better argument. Nowhere in our October 7, 2019 opinion did we rule that Mendez could proceed with his unreasonable search claim *only* to the extent it is based on the Officers' unlawful entry onto his property. (*See generally* Oct. 7, 2019 Op.) True, we denied Defendants' motion to dismiss Mendez's unreasonable search claim because he plausibly alleged an unlawful entry onto his property. (*Id.* at 8, 10.) But this is not the same as ruling that the

5

claim was thereafter limited to this trespass theory. For Mendez's unreasonable search claim to survive Defendants' motion to dismiss, he had to state a plausible claim for relief based on a single theory, which he did based on the trespass theory. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587, 589 (7th Cir. 2021) (where the plaintiff alleged that the defendant was liable based on three independent theories of agency liability, it was only necessary to determine whether the plaintiff stated a plausible claim based on one of those theories). Doing so did not limit him to that theory in this litigation. *See R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020) ("The complaint . . . did not dictate the legal theories G&S was permitted to rely on later in the lawsuit."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] complaint need not plead legal theories, which can be learned during discovery."). And nothing in our October 7, 2019 opinion suggests otherwise.

Third, the Officers argue that the alleged *Terry* stop cannot constitute a search under the Fourth Amendment. (*See* Reply at 3–4.) But whether Mendez's *Terry*-based search claim holds water is not the issue before us now. We are only deciding whether the Officers must address this claim (regardless of merit) in the first place.

In conclusion, our prior opinions do not preclude Mendez from asserting an unreasonable search claim based on the alleged *Terry* stop. Nor does the Officers' challenge to the merit of this assertion justify striking it. We therefore deny the Officers' motion to strike Section II of Mendez's summary judgment motion and corresponding statements of fact.

## II. The Officers' Request for Leave to File Their Own Summary Judgment Motion

Should we deny their motion to strike, the Officers alternatively request leave to file their own summary judgment motion on Mendez's *Terry*-based unreasonable search claim. (Mot. to Strike at 5; Reply at 6–7.) Whether to grant this request is a case management decision within our discretion. *Mlsna v. Union Pac. R.R.*, No. 18-cv-37-WMC, 2021 WL 1200596, at *1 (W.D.

Wis. Mar. 30, 2021); *Johnsen v. Vill. of Rosemont*, No. 10-cv-07097, 2014 WL 4909080, at *3 (N.D. Ill. Sept. 30, 2014).

The parties had until November 15, 2021, to move for summary judgment, and the Officers filed a summary judgment motion by this deadline. (Dkt. Nos. 199, 208.) The Officers do not contend, however, that their failure to address Mendez's *Terry*-based search claim in this motion was the result of "excusable neglect." *See Bowman v. Korte*, 962 F.3d 995, 997–98 (7th Cir. 2020) (finding that the district court abused its discretion by allowing the defendants to file a second summary judgment motion after the summary judgment deadline without a showing of "excusable neglect"). Indeed, the Officers do not support their request to file another summary judgment motion with any argument or legal citation. (Mot. to Strike at 5; Reply at 6–7.) In our discretion, we decline to invite another round of summary judgment briefing based on the Officers' undeveloped request. *See, e.g.*, *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). This request is denied as well.

**III.    Mendez's Cross-Motion to File an Additional Statement of Undisputed Fact**

Finally, we come to Mendez's cross-motion to file an additional statement of undisputed fact regarding Szczur's motivation for commanding him to stand during the alleged *Terry* stop. (Resp. at 6.) Whether to grant Mendez's request, which essentially asks us to allow him to belatedly supplement the summary judgment record, is also a matter of case management within our discretion. *See Mlsna*, 2021 WL 1200596, at *1; *In re FedEx Ground Package Sys., Inc.*, 869 F. Supp. 2d 942, 970 (N.D. Ind. 2012).

As already noted, the summary judgment deadline was November 15, 2021. Mendez does not provide any good reason for his failure to include the statement at issue in the Local Rule 56.1(a)(2) statement of facts that he submitted on this date. Nor does Mendez direct us to

any legal authority that would support allowing him to add a statement of fact more than three weeks after this deadline. As such, we deny Mendez's request to file an additional statement of material fact. *See Schaefer*, 839 F.3d at 607; *Borrelli v. Unumprovident Corp.*, No. 01 C 6938, 2002 WL 31319476, at *5 (N.D. Ill. Oct. 11, 2002) (denying as untimely the plaintiff's cross-motion for summary judgment when it was filed three weeks after the court-ordered deadline).

## CONCLUSION

For the foregoing reasons, the Officers' motion to strike (Dkt. No. 219) and Mendez's cross-motion are denied. The Officers have until March 17, 2022, to respond to Mendez's motion for partial summary judgment, and Mendez must file his reply within 14 days of the Officers' response. (*See* Dkt. No. 226.) The status hearing set for April 7, 2022, is stricken and reset to June 9, 2022, at 10:30 a.m. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: March 3, 2022